# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALFREDO GARCIA, <br><br> Defendant. | Case No. 1:15-cv-01732-DAD-SAB <br><br> **FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE PARTIALLY GRANTED** <br><br> (ECF No. 13) |

Currently before the Court is Plaintiff J & J Sports Productions, Inc.'s ("Plaintiff") motion requesting entry of default judgment. (ECF No. 13.)

The Court, having reviewed the record, finds this matter suitable for decision without oral argument. See Local Rule 230(g). Accordingly, the previously scheduled hearing set for March 23, 2016, will be vacated and the parties will not be required to appear at that time. For the reasons set forth below, the Court recommends that Plaintiff's motion be partially granted and judgment be entered in favor of Plaintiff in the amount of $3,000.00.

## I.

## BACKGROUND

Plaintiff filed the complaint in this matter on November 16, 2015. (ECF No. 1.) Plaintiff's complaint alleges that Defendant Alfredo Garcia ("Defendant") is the owner and/or operator of La Perla Restaurant, which is located at 36953-36955 S. Lassen Avenue, Huron,

California 93234.  (Compl. ¶ 7.)

Plaintiff is the exclusive nationwide commercial distributor of the "Manny Pacquiao v. Chris Algieri WBO Welterweight Championship Fight Program" ("the Program") which was telecast on Saturday, November 22, 2014.  (Compl. ¶ 14.)  Plaintiff alleges that Defendant illegally intercepted and displayed the Program at his commercial establishment.  (Compl. ¶ 17.)  Plaintiff contends that Defendant's actions violated 47 U.S.C. § 605 and 47 U.S.C. § 553.  (Compl. ¶¶ 13-27.)  Plaintiff also asserts a conversion claim and a claim under California Business and Professions Code § 17200 against Defendant.  (Compl. ¶¶ 28-41.)

Defendant failed to file a responsive pleading.[1]  On January 15, 2016, Plaintiff requested an entry of default against Defendant, which the Clerk of the Court entered on January 19, 2016.  (ECF Nos. 10-11.)  On February 19, 2016, Plaintiff filed the present motion for default judgment.  (ECF No. 13.)[2]

Plaintiff's investigator submitted an affidavit pertaining to the alleged illegal telecast.  (ECF No. 13-3.)  Jeff Lang was at La Perla Restaurant on November 22, 2014, at approximately 7:55 p.m.  (Decl. of Affiant ("Lang Decl."), ECF No. 13-3 at 2.)  Mr. Lang indicated that he observed 3 television sets, describing them as "an older model 46" (+/-) flat screen Sony" and two "older model, unknown brand, 21" (+/-) units."  (Id.)  Mr. Lang further observed the televisions broadcasting an onscreen graphic comparing punch totals landed between fighters Vasyl Lomachenkmo and Chonlatarn Piriyapinyo from the previous fight.  (Id.) Mr. Lang saw additional onscreen graphics promoting "STILL TO COME" matches including the one between Manny Pacquiao and Chris Algieri.  (Id.)

Mr. Lang described La Perla Restaurant as "a medium sized Mexican cuisine style restaurant in good condition," "[s]ituated within the incorporated city limits of Huron" in Fresno County.  (Id.)  Mr. Lang stated that "[i]t appeared as if the common wall separating suites 36953

---

[1] The Court notes that on December 11, 2015, Plaintiff filed proof of service of the summons and complaint, which indicated that Defendant was personally served on December 3, 2015.  (ECF No. 4.)

[2] The Court notes that Plaintiff filed proof of service of the notice of application and application for default judgment by the Court, which indicated that the fully sealed envelope with pre-paid postage was placed in Plaintiff's counsel's law firm's outbound mail receptacle on February 19, 2016.  (ECF No. 13 at 4.)

and 36955 had been removed, thus creating a larger suite which the restaurant now occupied." (Id.) Mr. Lang stated "its' [sic] clientele appeared to primarily consist of Spanish speaking members of the community." (Id.) Mr. Lang described the capacity of the establishment as approximately 50 people and had counted 22 people at the establishment while he was there. (Id. at 3.) Mr. Lang wrote that he left at approximately 8:01 p.m., which indicates that he was there for approximately six minutes. (Id. at 3.)

Plaintiff submitted an affidavit from Joseph M. Gagliardi, Plaintiff's president, describing Plaintiff's damages. (ECF No. 13-4.) Mr. Gagliardi stated that the commercial sublicense fee for a commercial establishment with a maximum fire code occupancy of 50 persons would have been $2,000.00. (Pl.'s Aff. in Supp. of Pl.'s App. for Def. J. by the Court ("Gagliardi Affidavit"), ECF No. 13-4 at 3.)

## II.

## LEGAL STANDARDS FOR DEFAULT JUDGMENT

Entry of default judgment is governed by Federal Rule of Civil Procedure 55(b), which states, in pertinent part:

> (2) **By the Court.** In all other cases[3], the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
> (A)  conduct an accounting;
> (B)  determine the amount of damages;
> (C)  establish the truth of any allegation by evidence; or
> (D)  investigate any other matter.

Upon entry of default, the complaint's factual allegations regarding liability are taken as true. Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977); Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1235 (E.D. Cal. 2008). However, the complaint's factual allegations

---

[3] Rule 55(b)(1) governs entry of default judgment by the clerk in cases where the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, which does not apply in this case.

relating to the amount of damages are not taken as true. Geddes, 559 F.2d at 560. Accordingly, the amount of damages must be proven at an evidentiary hearing or through other means. Microsoft Corp., 549 F. Supp. 2d at 1236. Per Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

Entry of default judgment is committed to the Court's discretion. Eithel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986).

## III.

## DISCUSSION

Plaintiff seeks default judgment totaling $112,000.00. (Decl. of Thomas P. Riley in Supp. of Pl.'s App. for Def. J. by the Court ("Riley Decl."), ECF No. 13-2.) Plaintiff only seeks to recover relief on his 47 U.S.C. § 605 claim and his conversion claim. (Id.)

**A.     Default Judgment on Plaintiff's 47 U.S.C. § 605 Claim**

Plaintiff seeks the maximum amount ($10,000.00) in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) (hereinafter referred to as "Damages"). (Mem. of P. & A. in Supp. of Pl.'s Appl. for Def. J. by the Court ("Pl.'s MPA") ECF No. 13-1 at 8-14.) Plaintiff also seeks the maximum amount ($100,000.00) in statutory "enhanced[4]" damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) (hereinafter referred to as "Enhanced Damages"). (Pl.'s MPA at 14-20.)

Both Damages and Enhanced Damages stem from violations of 47 U.S.C. § 605(a). Section 605(a) prohibits the unauthorized interception and distribution of communications. 47 U.S.C. § 605(a). "[L]iability under section 605 requires proof that a defendant has (1) intercepted or aided the interception of, and (2) divulged or published or aided the divulging or publishing of, a communication transmitted by the plaintiff." California Satellite Systems v. Seimon, 767 F.2d 1364, 1366. (9th Cir. 1985). Plaintiff's complaint states a claim for a violation of Section 605. See J and J Sports Productions v. Coyne, 857 F. Supp. 2d 909, 914 (N.D. Cal. 2012) (commercial

---

[4] Although the term "enhanced" does not appear anywhere in the statute, courts have characterized the damages under Section 605(e)(3)(C)(ii) as "enhanced" damages. See, e.g., J&J Sports Productions v. Lua, 1:14-cv-01350-MCE-SAB, 2015 WL 1509004, at * 4-5 (E.D. Cal. April 1, 2015); Joe Hand Promotions, Inc. v. Streshly, 655 F. Supp. 2d 1136 (S.D. Cal. 2009); Kingvision Pay-Per-View, Ltd. v. Backman, 102 F. Supp. 2d 1196 (N.D. Cal. 2000). Accordingly, the Court will use the same term when referencing damages under this section.

establishment violated Section 605 by broadcasting pay-per-view boxing match without authorization).

1. Claim for Damages

Plaintiff requests the maximum amount of statutory damages available under 47 U.S.C. § 605(e)(3)(C)(i)(II), which states:

> (3)(A) Any person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction.
> ...
> (C) (i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party[5], in accordance with either of the following subclauses;
> ...
> (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just....

Courts have taken several different approaches when establishing the appropriate amount of Damages. In Kingsvision Pay-Per-View, Ltd. v. Backman, 102 F. Supp. 2d 1196, 1198 (N.D. Cal. 2000), the Court awarded the statutory minimum of $1,000 and reasoned that "distributors should not be overcompensated and statutory awards should be proportional to the violation." In J & J Sports Productions, Inc. v. Betancourt, No. 08CV937 JLS (POR), 2009 WL 3416431, at *4 (S.D. Cal. Oct. 20, 2009), the Court considered the statute's policy of deterring future violations and looked at whether the circumstances were egregious or unusual.

The Court finds that an award of $1,000 is appropriate in this action and that any amount over $1,000, based upon this record, would overcompensate the distributor. The Court notes that the record submitted by Plaintiff is sparse. There is no evidence which explains Defendant's involvement in the alleged interception and unauthorized broadcast of the Program. It is unclear if Defendant was directly involved in the piracy or whether it was an employee or some other subordinate. It is unclear if Defendant was even aware of the piracy. The evidence pertaining to Defendant appears to be limited to the fact that Defendant's name appears on the liquor license

---

[5] The alternative method of calculating damages, which was not elected by Plaintiff, is the "actual damages suffered ... as a result of the violation." 47 U.S.C. § 605(e)(3)(C)(i)(I).

5

for La Perla Restaurant.

There is also little to no evidence regarding the extent of the commercial advantage gained by Defendant as a result of the alleged piracy. Plaintiff's private investigator reports that approximately 22 patrons were present at La Perla Restaurant when the Program was broadcast, but that information fails to convey much information to the Court in terms of the extent of the commercial advantage gained by Plaintiff since the Court has no information regarding how many patrons are present under normal circumstances when no fight is broadcast. There is no evidence that the broadcast was advertised. The Court notes that, in order to obtain commercial advantage, Defendant would have had to let potential customers know of the broadcast, and it is unclear whether such advertising and promotion of the illegally pirated broadcast took place, or to what extent it took place. Plaintiff admits that there was no cover charge. All-in-all, there is little evidence in this case to support a large Damages award.

The Court finds that a $1,000 Damages award, considered in combination with the $2,000.00 award on Plaintiff's conversion claim, as stated in further detail below, and the additional amount in attorneys' fees and costs, is appropriate. The $2,000.00 award on the conversion claim plus attorneys' fees and costs effectively put Plaintiff in the position he would have been if Defendant paid the license fee to legally broadcast the Program. The additional $1,000 in Damages serves the statute's purpose of deterring future violations. Future violations by the same Defendant may warrant higher amounts of Damages. Therefore, the Court recommends that Plaintiff be awarded $1,000 in Damages.

2. Claim for Enhanced Damages

Plaintiff requests the maximum amount of Enhanced Damages available under 47 U.S.C. § 605(e)(3)(C)(ii), which states:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

The Enhanced Damages are analogous to punitive damages, as they are awarded at the

6

Court's discretion in cases where a defendant's actions are willful and for the purpose of financial gain. See BMW of North America, Inc. v. Gore, 517 U.S. 559, 580 (1996) (purpose of punitive damages is to punish and deter egregiously improper conduct). Factors considered by courts in assessing (C)(ii) Enhanced Damages include (1) repeat violations, (2) the extent of the unlawful monetary gains, (3) actual damages to the plaintiff, (4) the defendant's advertising for the broadcast of the event, (5) charging cover to enter the establishment to view the event, or (6) charging a premium for food or drinks during the event. See, e.g., Kingsvision Pay-Per-View, Ltd. v. Gutierrez, 544 F. Supp. 2d 1179, 1185 (D. Colo. 2008); Kingsvision Pay-Per-View, Ltd. v. Backman, 102 F. Supp. 2d at 1198.

For the same reasons discussed above, with respect to (C)(i)(II) Damages, the Court finds that (C)(ii) Enhanced Damages are not appropriate. The Court is also disturbed that Plaintiff requests the maximum allowable penalty despite the fact that the facts here do not justify such an award and despite previous admonitions by this Court.

In J&J Sports Productions, Inc. v. Garcia, 1:12-cv-01510-LJO-SAB, 2013 WL 636707, at * 4 at n.6 (E.D. Cal. Feb. 15, 2013), Plaintiff's counsel was advised that:

> [i]n future requests for default judgment submitted in this Court, any request for the maximum amount of statutory penalties should be accompanied by an evidentiary showing justifying the maximum amount. The Court is cognizant of prior cases where the judgment requested was not in line with the evidence supporting the request. See, e.g., Joe Hand Promotions, Inc. v. Streshly, 655 F. Supp. 2d 1136, 1139 (S.D. Cal. 2009). Accordingly, Plaintiff is hereby forewarned that the Court will not entertain future requests for judgment that are patently unreasonable based upon the evidence submitted.

In J&J Sports Productions, Inc. v. Montano, 1:12-cv-00738-AWI-SAB, 2013 WL 1680633, at * 2 at n.4 (E.D. Cal. April 17, 2013), the Court stated:

> In a prior case, J&J Sports Productions, Inc. v. Richard Jesus Garcia, Case No. 1:12-cv-01510-LJO-SAB, this Court admonished Plaintiff and Plaintiff's counsel for requesting the maximum amount of statutory penalties when such a request did not appear to have any justification based upon the circumstances specific to the case and the evidence presented. Since the Court's admonishment occurred before Plaintiff filed the present motion for default judgment in this action, the Court will not take any action against Plaintiff for again requesting maximum statutory penalties with

little factual or legal basis for doing so. However, Plaintiff is again forewarned that future requests for maximum statutory penalties that are not justified by the facts of the case will not be entertained by this Court.

The cases cited by Plaintiff make clear that the factors relevant in assessing the amount of (C)(ii) Enhanced Damages do not exist here or Plaintiff did not investigate those factors. There is no suggestion that Defendant is a repeat violator. There is no evidence of the extent of Defendant's unlawful monetary gains. Although Defendant's investigator counted 22 patrons during the broadcast, there is no evidence that this number was attributable to the Program. Notably, Plaintiff could have sent its investigator back to the same establishment to perform headcounts at the same time on the same day of the week on days when there was no illegal broadcast for comparative purposes, but Plaintiff chose not to do so. There is no evidence of any advertising for the illegal broadcast. There was no cover charge or evidence of any premium charged for food or drinks during the broadcast. In fact, there is no evidence that Defendant was charging anything for food or drinks, as Mr. Lang's affidavit does not state that he attempted to order food or drinks, and does not specifically reference observing any food or drink sales.

Plaintiff argues that larger damage awards are justified to combat piracy. While the Court understands Plaintiff's economic arguments and the fact that piracy will not be deterred if offenders are required to only pay license fees in the small fraction of cases where they are caught pirating broadcasts, the Court is nonetheless is governed by the plain language of the statute and is authorized to impose Enhanced Damages in situations where "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). As discussed above, there is insufficient evidence that Defendant's actions were committed willfully for purposes of commercial advantage or private financial gain.

Given the lack of evidence that Defendant profited, directly or indirectly, from the allegedly illegal display of the Program and Plaintiff's failure to present more detailed evidence or conduct a more thorough investigation, the Court finds that Plaintiff failed to carry its burden in demonstrating that Enhanced Damages are proper. Therefore, the Court recommends that Plaintiff's request for Enhanced Damages be denied.

### B.   Plaintiff's Request for Conversion Damages

Plaintiff seeks $2,000.00 in damages for conversion. (Pl.'s MPA at 20.) Under California law, the elements for the tort of conversion are: (1) ownership or right to possession of property, (2) wrongful disposition of the property right of another, and (3) damages. Don King Productions/Kingsvision v. Lovato, 911 F. Supp. 419, 423 (N.D. Cal. 1995). Wrongful interception of television broadcasts can constitute conversion. Id.

Plaintiff submitted evidence demonstrating that Defendant would have paid $2,000.00 to Plaintiff if Defendant lawfully obtained the license to broadcast the Program at La Perla Restaurant. (Pl.'s Aff. in Supp. of Pl.'s App. for Def. J. by the Court at 3, 17.) Therefore, the Court finds that $2,000.00 is an appropriate damage award for Plaintiff's conversion claim. Accordingly, the Court recommends that Plaintiff be awarded $2,000 for Plaintiff's conversion claim.

## IV.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court HEREBY RECOMMENDS that Plaintiff's motion for default judgment be PARTIALLY GRANTED and that judgment be entered in favor of Plaintiff and against Defendant in the total amount of $3,000, as follows:

- A.   $1,000 in Damages, for violation of 47 U.S.C. § 605(e)(3)(C)(i)(II); and
- B.   $2,000.00 in damages for Plaintiff's state tort claim for conversion.

The Court recommends that Plaintiff's request for Enhanced Damages, in violation of 47 U.S.C. § 605(e)(3)(C)(ii)be denied.

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The Court will then review the Magistrate Judge's

ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may constitute a waiver of the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **March 18, 2016**

UNITED STATES MAGISTRATE JUDGE